IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELMER KITTRELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-cv-323-TFM |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   PROCEDURAL HISTORY**

Plaintiff Elmer Kittrell filed for an application for disability insurance benefits on March 14, 2013, alleging disability beginning March 5, 2013. Mr. Kittrell's application was denied at the initial administration level, and his request for a hearing before an Administrative Law Judge ("ALJ") was granted. Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act and denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review on March 3, 2016, consequently the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g), and 28 U.S.C. § 636(c). Based on

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

the court's review of the record in this case, the parties' briefs (Docs. 12-13), and the relevant law, the court concludes that the Commissioner's decision is AFFIRMED.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

See 20 C.F.R. § 404.1520.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to the finding of a disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." 20 C.F.R. § 416.920(a)-(f); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4] This five-step analysis is a fair and just way for determining disability applications to conform to the Social Security Act. *See Bowen v. Yuckert,* 482 U.S. 137, 153 (1987)(citing *Heckler v. Campbell,* 461 U.S. 458, 461 (1983)) (The

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[4] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981)(Unit A).

use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant for steps 1-4. On the fifth step, the burden shifts to the ALJ, who must show that there are significant jobs in the economy that claimant can perform. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *McDaniel* 800 F.2d at 1030. The ALJ must determine the claimant's Residual Functioning Capacity ("RFC") for steps four and five. 20 C.F.R. § 404.1520(a)(4). The claimant's RFC is what he can still do in spite of his physical or mental impairment(s) based on all medical evidence. *Phillips v. Barnhart* 357 F.3d 1232, 1239 (11th Cir. 2004). For the fifth step, the ALJ relies on a vocational expert (VE) to determine if there are jobs in the national and local economy that claimant can perform considering the claimant's RFC, age, education, and previous work experience. *Id.* At 1239-40. A vocational expert is an expert on what kinds of jobs individuals can perform with regard to his capacity and impairment(s). *Id.* The ALJ must pose a hypothetical scenario which includes all of the claimant's impairment(s), to the VE for testimony to be considered substantial evidence. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. §405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

### III. BACKGROUND

**A. The Commissioner's Decision**

The plaintiff was 43 years old which is defined as a younger individual age 18-44, on the alleged disability onset date, has a limited education, and is able to communicate in English (R. 21-22). He has prior work history as a mechanic, where he repaired machines. (R. 14). The plaintiff alleges he became disabled on March 5, 2013, due to fibromyalgia and obesity. (R. 13). After the hearing, the ALJ found that Kittrell suffers from severe impairments of fibromyalgia and obesity. (R. 13). The ALJ determined that the claimant has the (RFC) to perform sedentary work as defined in 20 CFR § 404.1567(a). (R. 14).

To make this determination, the ALJ must follow a two-step process. (R. 14). The first step is to determine whether there is an underlying medically determinable physical or mental impairment(s)—i.e. impairment(s) that can be determined by medically acceptable diagnostic techniques—that could be reasonably expected to cause claimant's pain or other symptoms. (R. 14). The second step is to evaluate whether the underlying physical or mental impairment(s) limit the claimant's functioning due to the intensity, or persistence of the claimant's symptoms. (R. 14).

Here, the ALJ looked at the entirety of the medical records and the claimant's reports to make her determination. The ALJ found that Kittrell is not able to perform his past relevant work as a mechanic based on limitations as prescribed by his treating physician. (R. 21). In determining whether the underlying physical or mental impairment(s) limited the claimant's functioning, the ALJ relied on the expertise of a vocational expert (VE)[5] by providing a series of hypotheticals to determine if the claimant could find work with limitations as prescribed. (R. 61-65). A person with the same vocational profile as the claimant, with the capacity to perform light

---

[5] Joshua S. Tilton, Ph.D., C.R.C., L.R.C.

work activity, with the following limitations; sit/stand intervals every 60 minutes, no climbing, and no more than occasional overhead reaching, etc. would be limited to unskilled work activity due to the side effects of pain and medication. With this hypothetical in mind, VE was able to determine three examples of unskilled work activity the claimant could do with those limitations. (R. 61-62).

(1) Storage facility rental clerk
    a. Nationally there are approximately 416,000 jobs.
    b. In Alabama there are approximately 8,700 jobs.

(2) Cashier
    a. Nationally there are approximately 3,400,000 jobs.
    b. In Alabama there are approximately 66,000 jobs.

(3) Self-service store attendant
    a. Nationally there are approximately 4,200,000 jobs.
    b. In Alabama there are approximately 57,000 jobs.

The second hypothetical given, with the claimant's vocational profile, limited to sedentary work activity; no climbing, occasional overhead reaching, etc. and limited to unskilled work, the VE was able to determine three examples of work the claimant could with those limitations. (R. 63).

(1) Food and beverage order clerk
    a. Nationally there are approximately 227,000 jobs.
    b. In Alabama there are approximately 2,700 jobs.
(2) Charge account clerk
    a. Nationally there are approximately 215,000 jobs.
    b. In Alabama there are approximately 3,800 jobs.

(3) Addressing clerk
    a. Nationally there are approximately 109,000 jobs.
    b. In Alabama there are approximately 710 jobs.

The third hypothetical given, with the addition of the sit/stand option to limitations given in hypothetical two, all three of the jobs presented would still be available, in the same numbers. (R. 64). The last hypothetical given, if an individual was only able to work six hours in a normal

work day and that if the individual was absent three or more times in a typical month, would the individual be able to perform competitive work activity, and the VE confirmed that it would be unlikely based on his training and experience. (R. 65).

Because there are jobs that exist in significant numbers in the national and local economy that the claimant can perform with consideration to claimant's age, education, work experience, and RFC, the ALJ determined that the claimant was not disabled. (R. 22).

### B.  The Plaintiff's Claims

Kittrell raises the issue of whether the Commissioner's decision should be reversed because the ALJ erred in rejecting the medical opinions of record of Mr. Kittrell's treating specialist. (Doc. 12, Pl. Br. 3).

### IV.  DISCUSSION

Kittrell argues that the ALJ erred in rejecting the medical opinions of record of Mr. Kittrell's treating specialist. On May 15, 2007,[6] Mr. Kittrell was seen by Wael Hamo, M.D. with a history[7] of upper back pain with features of left thoracic radiculopathy with negative MRI of cervical and lumbosacral spine. During multiple consultations with Dr. Hamo, Kittrell reported constant upper and lower back pain. Dr. Hamo's assessments included "tenderness of the thoracic spine area." Treatment included occipital nerve block and trigger point injections, as well as prescriptions to Lyrica, Cymbalta, Pristique, and Ultram for "fibromyalgia pain." (R. 244-257).

However, the ALJ appropriately assessed the opinion of Dr. Hamo. When determining the weight to give to a doctor's opinion, an ALJ considers many factors, including whether the

---

[6] Kittrell has medical records dating back to October 11, 2005. However, Plaintiff states the error relates to May 15, 2007 forward.

[7] Kittrell had seen Dr. Hamo since May 2, 2006.

doctor examined the claimant, the evidence the doctor presents to support his opinion, whether the doctor's opinion is consistent with the record as a whole, the doctor's specialty, and other factors. See 20 C.F.R. § 404.1527(c); *Schuhardt v. Astrue*, 303 F. App'x 757 (11th Cir. 2008). A treating doctor's opinion is generally entitled to more weight, thus an ALJ must articulate specific reasons for discounting a treating doctor's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Phillips* 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error).

Absent "good cause," the ALJ is to give medical opinions of treating physicians "substantial weight." *Winschel* 631 F.3d at 1179 (citing *Lewis v. Callahan*, 125 F.3d at 1440). Good cause exists when the treating physician's opinion is not supported by evidence, the evidence supports and contrary finding, or the treating physician's opinion was inconsistent with the doctor's medical records. *See* 20 C.F.R. § 404.1527(c); *Phillips,* 357 F.3d at 1241. Although a physician's opinion about what a claimant can or cannot do is relevant, these opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c*); see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012)("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). There is substantial evidence to support the ALJ's assessment of Dr. Hamo's opinion. (R. 19, 21, 328-29).

On June 9, 2014, Dr. Hamo completed the "Medical Statement Regarding Fibromyalgia for Social Security Disability Claim" form. (R. 328-29). Dr. Hamo check-marked a list of symptoms, history or widespread pain for three or more months, pain in eleven or more pressure

points, stiffness, tension headaches, parethesias, and chronic fatigue. (R. 328). Dr. Hamo indicated that Kittrell could work six hours a day, stand for ten minutes at a time and for a total of 30 minutes in a workday, sit for 60 minutes at a time and for a total of less than six hours in a workday. (R. 328). Kittrell could lift 10 or 20 pounds occasionally, not lift any weight frequently, and occasionally bend, stoop, and raise his arms above shoulder level. (R. 328). Dr. Hamo opined that Kittrell would miss more than four days of work each month and could not work an eight hour day, five days a week from March 5, 2013, Kittrell's alleged disability onset date. (R. 329). The medical findings to support this assessment were listed as "chronic neck pain, chronic upper and lower back pain, thoracic radiculopathy, thoracic and L [4-]5 spine disease, fibromyalgia." (R. 329).

The ALJ accepted Dr. Hamo's limitations to standing for ten minutes at a time and sitting for 60 minutes at a time and limiting Kittrell to lifting 10 pounds and occasionally reaching overhead. (R. 14, 21, 328-29). However, the ALJ discussed how the remainder of Dr. Hamo's opinion is inconsistent with Kittrell's treating records and Dr. Hamo's more recent examination findings. (R. 21). The ALJ devoted a substantial part of her decision discussing the relevant medical evidence. (R. 14-21, 244-47, 177-83, 185-92, 198-99, 310-11, 334-35). Additionally, the ALJ noted specifically why she found that Kittrell's fibromyalgia was not disabling, as alleged by Kittrell and Dr. Hamo. (R. 20).

Additional evaluation of Kittrell by a consulting M.D. Dimtcho Popov, at the State Agency's request, was conducted on April 30, 2013. Dr. Popov observed that Kittrell was not in acute distress and recorded normal findings. (R. 20, 280-83). The ALJ also referenced the treatment notes of Kittrell's rheumatologist, Elizabeth Perkins, M.D. (R. 20, 314-15). On

October 21, 2013, Dr. Perkins observed that Kittrell was not in acute distress and noted full strength, intact sensation, full range of motion, and normal gait (R. 316).

Dr. Hamo's own treatment records in June 2014 do not support Kittrell's allegations of legs going out or being unable to "do anything." (R. 20). Kittrell was not followed on a monthly basis, rather told to follow up three or four months after each visit with Dr. Hamo beginning in May 2013. (R. 20, 286, 189, 335). Dr. Hamo's treatment records during the relevant period of time consistently show full strength in extremities, mild tenderness in left and right occipital area, no restriction on neck movement, and normal gait. (R. 286, 288-89, 335). Dr. Hamo's post-alleged disability onset date treatment notes are largely unchanged from those treatment notes dating back to 2006, years before Kittrell stopped working. (R. 244-57). These findings support the ALJ's determination that Dr. Hamo's June 2014 opinion was not supported by Kittrell's treatment notes. (R. 20-21).

The ALJ referenced Dr. Hamo's most recent treatment notes as not being fully consistent with his contemporaneous opinion. (R. 21, 328-29, 334-35). The ALJ specifically highlighted that although Dr. Hamo's opinion was expressed on the "Medical Statement Regarding Fibromyalgia for Social Security Disability Claim" form and listed fibromyalgia as a "finding," his treatment notes from the same day do not list fibromyalgia with the other diagnoses in the "Assessment" section of the form. (R. 21, 328-29, 334-35). These inconsistencies further support the ALJ's determination to put little weight in Dr. Hamo's opinion that Kittrell had disabling limitations. (R. 21).

In short, the ALJ gave good reasons for her determination to assign little weight to Dr. Hamo's opinion, and is supported by substantial evidence. (R. 21, 328-29). Dr. Hamo's opinion was inconsistent with Kittrell's treatment notes, including Dr. Hamo's own records. (R. 21). The

evidence as a whole supports the ALJ's finding that Kittrell had the Residual Functional Capacity to perform a range of sedentary work and was thus not disabled. (R. 14-23).

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision.  A separate judgment will be entered.

DONE this 24th day of February 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE